UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA : NO. 3:20 CR 179

v. :

JOHN LAW, :
            Defendant :

FILED
SCRANTON

JUL 28 2020

PER _____
DEPUTY CLERK

**INDICTMENT**

THE GRAND JURY CHARGES:

**COUNT ONE**

(Conspiracy to Commit Wire, Bank, and Mail Fraud)

**I. Background**

At times material to the Indictment:

1. Defendant **JOHN LAW** was a resident of Rochester, New York and worked as an investment advisor in multiple states. JOHN LAW's responsibilities included offering and selling securities to investors and potential investors in the Middle District of Pennsylvania and elsewhere. JOHN LAW also provided investment advice to investors and potential investors in the Middle District of Pennsylvania and

1

elsewhere.

2. A "Ponzi scheme" is a type of financial fraud, in which an investment operation claims to pay returns to clients based on a promised investment strategy. In fact, however, the perpetrator of the Ponzi scheme does not invest client investment funds as promised. Rather, the perpetrator of the Ponzi scheme pays to clients purported investment returns that are comprised in whole or in part of investment funds from other clients.

3. First Nationle Solution, LLC ("First Nationle") was a Michigan corporation. Perry Santillo was the founder and Chief Executive Officer of First Nationle. First Nationle purported to conduct business in multiple industries, including leveraged investments, the financial services industry, insurance, and real estate development.

4. Boyles America LLC ("Boyles America") was originally incorporated in Illinois, and underwent an involuntary dissolution in Illinois in December 2017. Boyles America purported to conduct business in the trucking industry.

5. Percipience Global Corporation was a Delaware Corporation.

Percipience purported to conduct business by providing loans to borrowers to buy and improve single-family houses.

6. United RL Capital Services LLC was a Delaware and Michigan Corporation. United RL purported to conduct business by financing physician-owned toxicology laboratories.

7. In fact, First Nationle, Boyles America, Percipience, and United RL, and other fraudulent issuers, controlled by JOHN LAW, Perry Santillo, and their co-conspirators, did not conduct their purported businesses. Rather, JOHN LAW, Perry Santillo, and their co-conspirators used First Nationle, Boyles America, Percipience, and United RL, and other entities, to further a Ponzi scheme by issuing securities in the form of promissory notes, offering and selling those promissory notes to investors and potential investors, misappropriating investor funds for personal use, and using investor funds to pay other investors who redeemed promissory notes.

## II. Manner and Means

The conspiracy was accomplished, in part, by the following manner and means:

8. JOHN LAW, Perry Santillo, Christopher Parris, and their co-conspirators purchased and caused to be purchased books of business from investment professionals, such as registered representatives and investment advisors, located nationwide.

9. JOHN LAW, Perry Santillo, Christopher Parris, and their co-conspirators solicited and caused to be solicited investors and potential investors from within those newly acquired books of business to withdraw money from their existing investments and reinvest those funds in promissory notes issued by issuers controlled by the conspirators, including, but not limited to, First Nationle, Boyles America, Percipience, United RL, and others, sometimes without disclosing to the investors that the conspirators controlled those issuers.

10. Investors agreed to withdraw money from their existing investments and reinvest those funds as recommended by the coconspirators in reliance on their misrepresentations that the promised returns on investments were guaranteed, that bonuses would be paid in some circumstances, that issuers were involved in legitimate business enterprises, and that their investment funds would be used for

4

legitimate business purposes. In fact, as the conspirators well knew, those issuers were part of a Ponzi scheme, conducting little if any legitimate business, the investments were not guaranteed, and the investment funds would be misappropriated by the conspirators for personal use or to make Ponzi payments to other investors, perpetuating the scheme.

11. The scheme defrauded investors throughout the United States, including within the Middle District of Pennsylvania. Between approximately January 2008 and June 2018, JOHN LAW, Perry Santillo, and their co-conspirators raised and caused to be raised at least $115.5 million through fraudulent offerings. The majority of that money was used for either Ponzi scheme payments to investors who redeemed their promissory notes or for the personal use of JOHN LAW, Perry Santillo, and their co-conspirators, including, but not limited to, at least $1 million spent on custom suits and lavish parties.

12. In the Middle District of Pennsylvania, JOHN LAW, Perry Santillo, and their coconspirators conducted their fraud scheme under the guise of an "investment business" located in Scotrun, Monroe

County, using various business names, including Advice and Life Group, Poconos Investments, First American Securities, and Financial Planners Group of America.

13. Beginning in approximately May 2015, **JOHN LAW**, Perry Santillo, and their coconspirators fraudulently raised and caused to be raised approximately $8 million from approximately 55 investors in Pennsylvania, including investors in the Middle District of Pennsylvania, by selling fraudulent investments in First Nationle, Boyles America, United RL, and other fraudulent issuers, all of which were operated as part of the overall Ponzi scheme.

### The Fraudulent Offerings

14. **JOHN LAW**, Perry Santillo, Christopher Parris, and their co-conspirators induced and caused to be induced investors and potential investors to invest at least $46 million in First Nationle promissory notes since February 2012, $22 million in Percipience promissory notes since July 2012, $25 million in United RL promissory notes since March 2015, and $3.2 million in Boyles America promissory notes, among other fraudulent offerings.

## Misrepresentations, Omissions, Misappropriations, and Breaches

15. **JOHN LAW**, Perry Santillo, Christopher Parris, and their co-conspirators misrepresented to investors and potential investors that the money they invested in First Nationle, Boyles America, Percipience, United RL, and several other fraudulent issuers was used to conduct the purported business of each respective issuer. Investors were not told that, in fact, a significant portion of investor proceeds was used to repay investors redeeming promissory notes, or was misappropriated for personal use by the co-conspirators. **JOHN LAW** breached the duties he owed to investors when he failed to use investor funds as represented, and when he failed to inform investors that he and his coconspirators were misappropriating investor funds.

16. The fraudulent issuers' offering documents, as provided and caused to be provided by **JOHN LAW** and his co-conspirators to investors and potential investors, as well as the issuers' websites, falsely stated that investments would be used to fund legitimate businesses. However, rather than use investors' funds for purported legitimate business purposes, **JOHN LAW**, Perry Santillo, and their co-

7

conspirators misappropriated funds for their personal use and used some of the funds to make Ponzi scheme payments to investors who redeemed promissory notes.

17. **JOHN LAW** and his co-conspirators also misrepresented the ongoing performance – or lack thereof – of investors' investments. The conspirators created and caused to be created and provided and caused to be provided account statements to investors falsely stating that their funds were invested, falsely stating investment returns, and in some cases falsely stating that a bonus had been credited to investor accounts. In certain instances, conspirators provided investors with purported bonus funds and interest payments, and in other cases conspirators provided investors who redeemed promissory notes with all or part of their funds, at times with returns. These were Ponzi scheme payments derived from new investor funds rather than actual investment returns. In other cases, conspirators failed to fulfill the request of investors to redeem their promissory notes.

18. Of the at least $115.5 million raised by **JOHN LAW** and his associates, approximately $44.8 million was paid out to earlier investors

in Ponzi scheme payments and tens of millions of dollars were misappropriated by **JOHN LAW**, Perry Santillo, Christopher Parris, and other co-conspirators through transfers to bank accounts they controlled, and through other methods.

19. **JOHN LAW** and his co-conspirators acted as investment advisers. For instance, Perry Santillo purchased multiple investment advisory businesses, and then continued the business of those investment advisers, acting as an investment adviser himself. In addition to purchasing investment advisory businesses, Perry Santillo advised clients and potential clients regarding securities transactions. Additionally, **JOHN LAW** and other co-conspirators advised clients and potential clients regarding securities transactions, including by reviewing clients' investment portfolios, offering clients advice regarding the assets in their investment portfolios, discussing investment strategies with clients, and recommending certain products to clients and potential clients. **JOHN LAW**, Perry Santillo, Christopher Parris, and other co-conspirators presented themselves to investors and potential investors as investment advisers who were

9

acting in the interests of those investors; they provided investment advice regarding investments in securities; and they each received compensation through misappropriated investor funds.

### Mailings, Wires, and Bank Accounts

20. It was further a part of the scheme and artifice that the conspirators used and/or maintained, directly or indirectly, accounts at one or more financial institutions, including, but not limited to, Bank of America, Citizens Bank and others.

21. It was further a part of the conspiracy that JOHN LAW and his co-conspirators used and caused to be used the mail, and transmitted and caused to be transmitted interstate wire communications, in furtherance of the Ponzi scheme, including to and from the Middle District of Pennsylvania and elsewhere. These wire communications and mailings included, but were not limited to, the following:

    a. Telephone calls;

    b. Email communications via the Internet;

    c. Electronic communications involving the clearing of checks and

other financial transactions through the Federal Reserve banking system;

d. Transfer by wire and electronic means of funds between financial institutions and companies located in different states; and

e. Delivery of mail matter by private and interstate carrier and by the United States Postal Service.

### III. Statutory Allegations

22. From at least in or about January 2008, the exact date being unknown to the Grand Jury, to in or about June 2018, in the Middle District of Pennsylvania, and elsewhere, the defendant,

**JOHN LAW,** did knowingly and unlawfully combine, conspire, confederate, and agree together with other persons, both known and unknown to the Grand Jury, to:

i. knowingly devise, and intend to devise, a scheme and artifice to defraud investors and potential investors, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and willfully participate

      in such a scheme with knowledge of its fraudulent nature, and for the purpose of executing the scheme and artifice to defraud, and attempting to do so, transmitted and caused to be transmitted by means of wire in interstate commerce, writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343;

ii. knowingly devise, and intend to devise, a scheme and artifice to defraud investors and potential investors, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and willfully participate in such a scheme with knowledge of its fraudulent nature, and for the purpose of executing the scheme and artifice to defraud, and attempting to do so, did knowingly place and cause to be placed in an authorized depository for mail matter and cause to be delivered by mail or by any private or commercial interstate carrier, checks, investment documents and investor correspondence, in violation of Title 18, United States Code, Section 1341; and

iii. execute and attempt to execute, a scheme and artifice to defraud,

and willfully participate in such a scheme with knowledge of its fraudulent nature, and to obtain the moneys, funds, credits, assets and other property owned by and under the custody and control of a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation, by means of materially false and fraudulent pretenses, representations and promises, in violation of Title 18, United States Code, Section 1344.

All in violation of Title 18, United States Code, Section 1349.

# THE GRAND JURY FURTHER CHARGES

## COUNTS TWO THROUGH FIVE

(Mail Fraud)

23. The factual allegations of paragraphs 1 through 21 of this Indictment are incorporated by reference.

24. On or about the dates set forth below, in the Middle District of Pennsylvania and elsewhere, the defendant,

**JOHN LAW,**

aiding and abetting and aided and abetted by others, known and unknown to the grand jury, having knowingly devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises and for the purpose of executing the above-described scheme and artifice to defraud, and having willfully participated in such a scheme with knowledge of its fraudulent nature, did knowingly place and caused to be placed in an authorized depository for mail matter and cause to be delivered by mail or by any private or

commercial interstate carrier, the following matters, with each being a separate count:

| Count | Date | Relevant Victim | Mail from | Mail to | Via |
|---|---|---|---|---|---|
| 2 | 2/1/2016 | B.F. | 140 Rose St., Scotrun, PA | 36 W. Main St. Suite 600, Rochester, NY | FedEx |
| 3 | 6/2/2016 | E.B. | 140 Rose St., Scotrun, PA | 430 W. 7th St., Kansas City, MO | FedEx |
| 4 | 11/9/2017 | J.P. | First Nationale Solution Rochester, NY | Hawley, PA | USPS |
| 5 | 4/5/2018 | J.P. | Boyles America, Rochester, NY | Hawley, PA | USPS |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## FORFEITURE ALLEGATION

23. The allegations contained in Counts One through Five of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 982(a)(2).

24. Upon conviction of the offenses in violation of Title 18, United States Code, Section 1349, and Title 18, United States Code, Section 1343, the defendant,

**JOHN LAW,**

shall forfeit to the United States of America, any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such offenses and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the offenses.

25. By virtue of the commission of the offenses charged in Counts One through Five of this Indictment by the defendant,

**JOHN LAW,**

any and all right, title, and interest the defendant may have had in any of the property involved in or traceable to the offenses alleged in Counts One through Five of this Indictment is vested in the United States and is hereby forfeited to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 982(a)(2).

25. If any of the property involved in or traceable to the offenses alleged in Counts One through Five of this Indictment, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(2).

A TRUE BILL



Date: 7-28-20

DAVID J. FREED
United States Attorney

By: _____

SEAN A. CAMONI
Assistant United States Attorney